PEOPLE v BURBANK

Docket No. 70711. Submitted February 14, 1984, at Detroit.—Decided
    May 18, 1984. Leave to appeal denied, 419 Mich __.

Defendant, Carolin Burbank, was charged in Detroit Recorder's
    Court with possession with intent to deliver amphetamine. The
    alleged controlled substances were found on her person when a
    police officer executing a search warrant for the home in which
    the defendant was a visitor noticed bulges in her clothing and
    searched under her clothing. The defendant was not one of the
    individuals named in the search warrant. Following a suppres-
    sion hearing, the trial court, Samuel H. Olsen, J., ordered that
    the evidence be suppressed and the case dismissed. The people
    appeal. *Held:*

    1. The police did not have probable cause to arrest the
    defendant. Since it was not apparent that the defendant pos-
    sessed illegal contraband, the police officer could not arrest the
    defendant or extend the warrant to search her.

    2. The fact that another person on the premises was found to
    possess contraband also did not provide probable cause to
    search the defendant.

    3. Defendant could legitimately expect as much privacy, if
    not more, when visiting her friends then while being a patron
    in a public place. Therefore, the Court of Appeals did not find
    certain United States Supreme Court precedent distinguishable
    on the ground that that case pertained to a search in a public
    place.

    Affirmed.

1. Searches and Seizures — Evidence.

    Evidence of suspected narcotics found on the person of a defen-
        dant during a search of the defendant is properly suppressed
        where the defendant did not live in the house that the police
        were searching and was not one of the individuals named in
        the search warrant and where the police did not have probable

References for Points in Headnotes
[1-3] 68 Am Jur 2d, Searches and Seizures §§ 21, 37, 42, 43.
[4] 68 Am Jur 2d, Searches and Seizures §§ 2, 4.

cause to arrest or search the defendant since it was not apparent that the defendant possessed the illegal contraband.

2. SEARCHES AND SEIZURES — PROBABLE CAUSE.

A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.

3. SEARCHES AND SEIZURES — PROBABLE CAUSE.

A search or seizure of a person must be supported by probable cause particularized with respect to that person where the standard is probable cause; this requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

4. CONSTITUTIONAL LAW — FOURTH AMENDMENT — FOURTEENTH AMENDMENT.

The Fourth and Fourteenth Amendments protect the legitimate expectations of privacy of persons, not places (US Const, Ams IV, XIV).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Sheldon Halpern,* for defendant on appeal.

Before: T. M. BURNS, P.J., and WAHLS and W. F. HOOD,* JJ.

PER CURIAM. Defendant was charged with possession with intent to deliver amphetamine. MCL 333.7401; MSA 14.15(7401).

At a suppression hearing, Officer Charnitta Perdue testified that she entered a home in Detroit on October 5, 1982, to execute a search warrant. When she arrived, she noticed several police offi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

cers and that five adults and some children were standing up against a wall with their hands on the wall. Officer Perdue observed bulges in the brassiere of Mrs. Burbank. She took Mrs. Burbank into another room and searched under her clothes. She removed from Mrs. Burbank's clothing three vials containing the alleged controlled substances which formed the basis of this prosecution. The search warrant directed the police to search the premises and certain named individuals. Mrs. Burbank was not among those named in the warrant. The trial court suppressed the evidence and dismissed the case. The prosecutor appeals as of right.

The prosecutor argues that, even though defendant was not named in the warrant, she was properly searched under the warrant and the evidence seized from defendant was, therefore, admissible. We find that this case is controlled by *Ybarra v Illinois,* 444 US 85; 100 S Ct 338; 62 L Ed 2d 238 (1979), and affirm.

In finding *Ybarra* controlling, we must distinguish *Michigan v Summers,* 452 US 692; 101 S Ct 2587; 69 L Ed 2d 340 (1981). In *Ybarra,* the police learned that a bartender was selling drugs in a tavern. A warrant was issued allowing for the search of the tavern and the bartender. 444 US 88. Defendant was a patron of the bar while the police executed the search warrant. The police detained defendant and patted him down. The officer patting defendant down noticed that defendant had a cigarette pack which felt as if it might have something in it. The officer seized this cigarette pack and found that it contained packets of heroin. The Court found that since the police did not have probable cause to search defendant the evidence should be suppressed. 444 US 96.

In *Michigan v Summers,* defendant lived in a

house which was the subject of a search warrant. Defendant was not named in the warrant. The police were about to execute the warrant when they found defendant on the front steps of the house. The officers asked defendant for his assistance in gaining entry to the house and then detained defendant while they searched the premises. 452 US 693. The police searched the house and found narcotics. They then arrested defendant and searched his person. They also found narcotics on defendant. The Court found that the narcotics seized from defendant were admissible, distinguishing *Ybarra:*

"The 'seizure' issue in this case should not be confused with the 'search' issue presented in *Ybarra v Illinois,* 444 US 85. In *Ybarra* the police executing a search warrant for a public tavern detained and searched all of the customers who happened to be present. No question concerning the legitimacy of the detention was raised. Rather, the Court concluded that the search of Ybarra was invalid because the police had no reason to believe he had any special connection with the premises, and the police had no other basis for suspecting that he was armed or in possession of contraband. See *id.,* pp 90-93. In this case, only the detention is at issue. The police knew respondent lived in the house, and they did not search him until after they had probable cause to arrest and had done so." 452 US 695-696, fn 4.

The instant case is distinguishable from *Summers* for the same reasons. Mrs. Burbank did not live in the house that the police were searching. The police also did not have probable cause to arrest Mrs. Burbank. While Officer Perdue testified that she observed bulges in defendant's clothing, she stated that she had no idea of what caused the bulges until she searched under defendant's

clothes. Since it was not apparent that Mrs. Burbank possessed illegal contraband, Officer Perdue could not arrest defendant or extend the warrant to search her. *People v Secrest,* 413 Mich 521, 528; 321 NW2d 368 (1982).[1]

The fact that another person on the premises was found to possess contraband also did not provide probable cause to search defendant. As stated in *Ybarra:*

"It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed. But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron v New York,* 392 US 40, 62-63; 88 S Ct 1889; 20 L Ed 2d 917 (1968). Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places. See *Rakas v Illinois,* 439 US 128, 138-143, 148-149; 99 S Ct 421; 58 L Ed 2d 387 (1978); *Katz v United States,* 389 US 347, 351-352; 88 S Ct 507; 19 L Ed 2d 576 (1967).

"Each patron who walked into the Aurora Tap Tavern on March 1, 1976, was clothed with constitutional protection against an unreasonable search or an unreasonable seizure. That individualized protection was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by the proprietor of the tavern or by 'Greg'. Although the search warrant, issued upon probable cause, gave the officers authority

[1] In *People v Nash,* 418 Mich 196; 341 NW2d 439 (1983), the Supreme Court expressed limited disapproval of *Secrest, supra. Nash,* however, does not affect our decision.

to search the premises and to search 'Greg', it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers." 444 US 91-92 (footnotes omitted).

The prosecutor further argues that *Ybarra* is distinguishable since in the instant case defendant was visiting a private residence, not a public place such as a tavern. We are unable to make such a distinction. Defendant could legitimately expect as much privacy, if not more, when visiting her friends than while being a patron in a public place.

After carefully considering the arguments, we find the trial court properly suppressed the evidence and dismissed the case.

Affirmed.